# APRIL 19, 1944

MAUDELLE ANDREWS, *alias* ROSE MARY CORBIN V. THE STATE.

No. 22792. Delivered March 22, 1944.
Rehearing Denied April 19, 1944.

The opinion states the case.

*Rogers, Spurlock & Love,* of Fort Worth, for appellant.

*Marvin H. Brown, Jr.,* Criminal District Attorney, and *M. Hendricks Brown,* First Assistant District Attorney, both of Fort Worth, and *Ernest S. Goens,* State's Attorney, of Austin, for the State.

KRUEGER, Judge.

The conviction is for the offense of robbery. The punishment assessed is confinement in the state penitentiary for a term of four years.

The record discloses that on the night of July 26, 1943, the appellant and her husband, in the City of Fort Worth, by the use of firearms, robbed Bill Courson of an automobile, eight dollars in money and one shirt. Upon her trial appellant entered a plea of not guilty; yet she testified that she participated with her husband, not only in the commission of the offense charged, but in four other robberies. She sought to relieve herself of responsibility for any of the offenses on the ground of duress. She claimed that he had threatened to kill her unless she did as he told her to do; that she became frightened and being in fear of her life or serious bodily injury she complied with his commands.

A number of complaints are brought forward, some of which relate to the exclusion of evidence, others to the admission of evidence, and still others relate to the court's charge.

It appears from Bill of Exception No. 1 that she called her husband as a witness and sought to prove by him that on several occasions he had mistreated her and had threatened to kill her if she did not aid in the commission of the robbery charged, as well as other robberies committed by them. The State objected to this testimony on the ground that he was a principal by reason of being a co-indictee. The court sustained the State's objection, to which she excepted. She seriously contends that notwithstanding Article 711, C.C.P., which provides that persons charged as principals, accomplices or accessories cannot be introduced as witnesses for one another, yet he was a competent witness in her behalf by virtue of Article 714, C.C.P., which provides as follows:

"The husband and wife may, in all criminal actions, be witnesses for each other; but they shall in no case testify against each other except in a criminal prosecution for an offense committed by one against the other."

She insists that Article 711, supra, is a general statute while Article 714, supra, is a special one; and inasmuch as a special controls a general statute, he was a competent witness in her behalf. We admit our inability to understand why Article 714, supra, is any more a special statute than Article 711, supra. The latter is one of prohibition while the former is one of privilege. It must be borne in mind that at common law the husband and wife are not competent witnesses for each other. The Legislature, in its wisdom, saw proper to remove the common-law restriction and confer upon them the privilege of testifying for

each other if either of them desired to avail himself of such privilege, and in pursuance thereof enacted Art. 714, supra, but at no time did the Legislature remove the restriction in cases where they were jointly indicted as principals. The question here presented was before this court in the case of Sipanek v. State, 272 S. W. 141, 100 Tex. Cr. R. 489, and decided adversely to her contention. See also Howell v. State, 2 S. W. (2d) 861; Sola v. State, 188 S. W. 1005, 80 Tex. Cr. R. 113. Her contention is therefore overruled.

Bills of Exception Nos. 2, 3 and 4 relate to the same matter and will be disposed of together. These bills show that appellant sought to prove by her sisters, Mrs. Morgan and Mrs. Elston, and by her mother, that when she was about twelve years of age her father died and that her mother had the misfortune to sustain a broken leg which incapacitated her from giving appellant the care, attention and supervision so vitally necessary to a child of tender years; that as a result of said circumstances she was sent to the Reformatory at Gainesville, where she remained for five and one-half years; that after she was released from said institution she was very susceptible to the influence of fear. The State objected to this testimony on the ground that it was immaterial and irrelevant and had no bearing on any issue in the case. The court sustained the objection to which she excepted. Whether the court was right or wrong in his ruling becomes immaterial inasmuch as each of the witnesses was permitted to testify that she was easily influenced and very susceptible to fear, without assigning any cause therefor.

Bill of Exception No. 5 reflects the following occurrence: While appellant was testifying in her own behalf and after she had stated that she was twelve years old when her father died, that her mother had the misfortune of breaking her leg, and that she was sent to the Girls' Training School at Gainesville for about five and one-half years, she was then asked by her counsel whether or not she was sent to said institution because of any misconduct on her part, to which the State objected on the ground that it was immaterial and irrelevant; that the commitment was the best evidence as to whether or not she was sent there for any misconduct. The court sustained the objection, to which appellant excepted. She claims that if she had been permitted to explain how she came to be sent to the Reformatory, she would have testified that she was not sent there because of any misconduct but because her mother had sustained a broken leg, and her father being dead, there was no one to take care of her. It occurs to us that she should have been permitted to make

the explanation. However, in view of the court's qualification to the bill to the effect that she did testify that she had never been guilty of any offense before, we do not believe that the claimed error is such as would require a reversal of the judgment inasmuch as her testimony on the subject was equivalent to the explanation which she sought to make.

By Bill of Exception No. 6 appellant complains of the action of the District Attorney in asking her on cross-examination in the presence and hearing of the jury the following question: "You wanted them to think you were another regular Bonnie Parker, didn't you?" Appellant objected thereto; the court sustained and instructed the jury not to consider the same for any purpose. She takes the position that notwithstanding the court's action, the question was of such a highly prejudicial nature that it could not be removed from the minds of the jury. This bill is qualified by the court, who states in his qualification thereof that by the testimony of Bill Courson, the injured party, it was proved that after they had kidnapped him and were driving out of the city into the country, the defendant's husband asked him (Courson) if he did not know who they were; that the victim replied in the negative. Thereupon, appellant's husband said to him: "Well, don't you read the papers?" He replied: "No, seldom, if ever." Appellant then said: "Well, honey, do you want me to show him the clippings?" Her husband replied: "No, I think the boy is scared to death now."

It will be noted that the court's qualification of the bill shows that the question complained of was not altogether without any basis or cause therefor. Appellant and her husband, by the questions which they propounded to their victim, created the impression that they were either notorious criminals or highly respectable citizens. Therefore, the State had a right to undertake to obtain an explanation of their acts, conduct and demeanor at the time of the commission of the offense such as it would seem was justified. It further appears that appellant anticipated the question because she replied: "I knew you was going to say that." Now, why did she expect that he would ask such a question if she was not of the opinion that she had emulated Bonnie Parker, and if she and her husband did not intend to create the impression in the mind of their victim that they were notorious criminals? Again, when she asked her husband if she may show their victim some newspaper clippings he said: "No, the boy is scared to death now," thus leaving the impression that the newspaper clippings would disclose them to be desperate criminals and therefore would frighten him more. Under the circumstances

disclosed by the bill, the question was not of such prejudicial nature, in view of the court's action, as would require a reversal of the judgment.

Bills of Exception Nos. 7 and 8, as well as the objections to the court's charge, have been examined by us and found to be without merit.

From what we have said, it follows that the judgment of the trial court should be affirmed, and it is so ordered.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

GRAVES, Judge.

Appellant again insists that her husband was a competent witness in her behalf by virtue of Art. 714, C.C.P. regardless of the fact that he was also charged by indictment with the same offense. We are not impressed with the argument thereon, especially in the face of the decision in Sipanek v. State, quoted in the original opinion. In that case it was said: "The wife of the appellant was offered by him as a witness but rejected upon the ground that she was indicted for the same offense. She was not available as a witness for the appellant. Under the facts as we understand them, she was precluded from testifying in his behalf by reason of (old) Art. 791, C.C.P."—now Art: 711, C.C.P. We do not think that holding should be disturbed.

The writer is of the opinion that under the cases of Watts v. State, 126 S. W. (2d) 485; Hayes v. State, 59 S. W. (2d) 163, and other cited cases, it would have been the better practice to have allowed the appellant to testify that she had committed no criminal offense at the time she was sent to the Girls' Training School, or reformatory, at Gainesville. but we are in accord with the original opinion herein wherein it was held that appellant's statement while on the witness stand, as follows, met the requirement of the law:

"Before I married him and started to go with him in the perpetration of these robberies under the circumstances I have told to this jury, I had never been guilty of any character of an offense before. I am under indictment here in four other cases than the one on which I am on trial for."

Evidently this testimony should have and doubtless did convey to the jury the idea that she was not sent to this traininig school for any moral or legal delinquency. It is observed that in the above mentioned cases the matters in derogation of the character of the witness were brought out by the State, and evidently intended to be used to such witness' disadvantage, and under such circumstances this court was of the opinion that the witness was possessed of the right of explanation, in an effort to render less odious, if possible, the stigma of a conviction for crime. In the instant case the years spent in the reformatory were matters volunteered by appellant in an effort to show her greater susceptibility to force and fear, and we think under the peculiar circumstances of this case she was adequately protected in her rights when she was allowed to testify that prior to these series of assaults, she had never been guilty of a crime of any character.

As to the question relative to appellant's desire to be classed as a "Bonnie Parker," we think the same has been properly disposed of in our original opinion.

The motion will therefore be overruled.